## THE CHIQUITA.

## HARTWIG v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
June 6, 1927.

No. 4976.

1. **Judgment ⬅=832—Shipping ⬅=2—Sale of American ship under foreign judgment enforcing lien held to divest her nationality, and not subject to collateral attack for failure to comply with statutes regulating sale to alien '(Comp. St. §§ 7753, 7762, 8086, 8132; Shipping Act Sept. 7, 1916, § 9, as amended [Comp. St. § 8146e]).**

American vessel, seized in the Bahamas to enforce maritime lien, and sold under admiralty process issuing out of the Supreme Court of the Bahamas by the marshal of that court, at public outcry, to a British subject, was divested of her American nationality, and that judgment could not be collaterally attacked for failure to comply with Rev. St. §§ 4172, 4179, 4337, 4377 (Comp. St. §§ 7753, 7762, 8086, 8132), and Shipping Act Sept. 7, 1916, § 9, as amended (Comp. St. § 8146e), regulating sale of American vessels to alien; such statutes having no extraterritorial authority.

2. **Customs duties ⬅=126—Seizure of liquor-laden foreign vessel by Coast Guard 35 miles from American coast held unlawful.**

Liquor-laden foreign vessel flying Honduran flag, seized by Coast Guard 35 miles off the coast of Louisiana in Gulf of Mexico *held* unlawful, since, though cargo might have been intended for ultimate consumption in the United States, vessel at time and place of seizure was not violating law of United States.

3. **Shipping ⬅=2—Flag under which merchant ship sails is prima facie proof of her nationality.**

The flag under which a merchant ship sails is prima facie proof of her nationality.

4. **Shipping ⬅=2—Nationality of vessel not properly registered is that of her owner.**

If a vessel is not properly registered, her nationality is still that of her owner.

5. **Customs duties ⬅=130(4)—Ship may not be declared forfeit on mere suspicion arising from frequent change of ownership (Comp. St. §§ 7753, 7762, 8086, 8132; Shipping Act Sept. 7, 1916, § 9, as amended [Comp. St. § 8146e]).**

Though frequent changes in name and ownership of vessel may give rise to suspicion that her true ownership was sought to be concealed to violate Rev. St. §§ 4172, 4179, 4337, 4377 (Comp. St. §§ 7753, 7762, 8086, 8132), and Shipping Act Sept. 7, 1916, § 9, as amended (Comp. St. § 8146e), property may not be declared forfeit on mere suspicion.

6. **Customs duties ⬅=133(6)—Burden of proving that liquor-laden vessel flying foreign flag was American vessel held on government seeking forfeiture (Comp. St. §§ 7753, 7762, 8086, 8132; Shipping Act Sept. 7, 1916, § 9, as amended [Comp. St. § 8146e]).**

Burden of proving with reasonable certainty that liquor-laden vessel flying foreign flag

19 F.(2d)—27

seized by Coast Guard 35 miles from American coast was American vessel, so as to subject her to forfeiture under Rev. St. §§ 4172, 4179, 4337, 4377 (Comp. St. §§ 7753, 7762, 8086, 8132), and Shipping Act Sept. 7, 1916, § 9, as amended (Comp. St. § 8146e), was on government to prove.

7. **Customs duties ⬅=133(6)—Evidence held not to sustain burden on government, seeking forfeiture of liquor-laden vessel, of proving that it was American vessel (Comp. St. §§ 7753, 7762, 8086, 8132; Shipping Act, Sept. 7, 1916, § 9, as amended [Comp. St. § 8146e]).**

Evidence *held* not to sustain burden on government of proving that liquor-laden vessel flying foreign flag, seized 35 miles from American coast by Coast Guard, and sought to be forfeited under Rev. St. §§ 4172, 4179, 4337, 4377 (Comp. St. §§ 7753, 7762, 8086, 8132), and Shipping Act Sept. 7, 1916, § 9, as amended (Comp. St. § 8146e), was an American vessel.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by the United States against the auxiliary gas screw schooner Chiquita, etc., claimed by Walter Karl Hartwig, master. From a decree of forfeiture (18 F.[2d] 673), claimant appeals. Reversed and remanded, with directions.

W. J. Gex, of Bay St. Louis, Miss., and William B. Grant, of New Orleans, La. (Gex & Russell, of Gulfport, Miss., on the brief), for appellant.

Wayne G. Borah, U. S. Atty., and Edmond E. Talbot, Asst. U. S. Atty., both of New Orleans, La.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. On August 31, 1926, the auxiliary schooner Chiquita, with a cargo of intoxicating liquor, was seized in the Gulf of Mexico, about 35 miles off the Louisiana coast, by a Coast Guard cutter, and brought into New Orleans. She was flying the Honduran flag, and had on board the usual ship's papers, among them a patent, dated May 19, 1926, indicating her temporary Honduran registry and clearance papers as such vessel from Havana, Cuba, to Truxillo, Honduras. A libel of information was filed by the United States attorney, alleging her to be an American vessel, and seeking her forfeiture, and that of her cargo, under the provisions of United States Revised Statutes, §§ 4377, 4337, 4172, 4129 (Comp. St. §§ 8132, 8086, 7753, 7675), and section 9 of the Shipping Act of September 7, 1916, as amended (Comp. St. § 8146e). In due course the District Court rendered

judgment in favor of the United States (18 F.[2d] 673), and decreed the forfeiture of the vessel and cargo, to reverse which judgment this appeal is prosecuted.

It appears without dispute that the vessel was built in 1914 at Scranton, Miss., and was first named the Louise Pol. In 1919 her name was legally changed to Patsy, under which name she was granted a license to engage in the coastwise trade. In 1922 the coastwise license was surrendered at Miami, Fla., and she departed on a voyage for Nassau. Shortly thereafter she was seized at Nassau to enforce a maritime lien, and was sold under admiralty process issuing out of the Supreme Court of the Bahamas, by the marshal of that court, at public outcry, and was purchased by a British subject. Her name was changed to Æsop, and she was given British registry. In February, 1926, she was seized off the coast of Mississippi, by the Coast Guard, and a libel was filed against her in the United States District court for the Southern District of Mississippi, charging her as a British vessel with violations of the customs laws. In that proceeding she was ordered released. She then went to Mobile, Ala., where she underwent repairs and a new engine was installed, which engine was purchased in New Orleans. Thereafter, on April 10, 1926, as appears by a bill of sale in the record, she was sold to Carlos Armador, a citizen of Honduras. That Armador is the present owner is supported by the oath of the captain of the vessel, Hartwig, appellant herein, who claimed her as bailee for the owner.

As against this there is evidence tending to show that Hartwig told the British vice consul at New Orleans that he was the owner and the ship had British registry; that the consul declined to interest himself, as the British registry had been closed because of the sale to an alien; that Hartwig is a German national; that the temporary Honduran registry had expired; and that permanent Honduran registry could not be obtained, unless both the ship and her owner were present in a port of Honduras.

The above fairly epitomizes the evidence, and there is absolutely nothing to show that there was any fraud practiced on the British court, or that the vessel is at present owned in whole or in part by an American citizen. It is not pretended that the vessel had violated any of the customs laws, or the National Prohibition Law, at the time of the seizure. The statutes of the United States sought to be enforced, briefly stated, prohibit the sale of an American vessel to an alien without the consent of the Shipping Board, the changing of her name without official sanction, and her engaging in commerce for which not licensed, all under penalty of forfeiture.

[1] There could be no doubt that the vessel was completely divested of her American nationality by her sale to a British subject under admiralty process by the Supreme Court of the Bahamas, and that judgment is not open to attack in any other court. Williams v. Armroyd (The Fortitude) 7 Cranch, 423, 3 L. Ed. 392; Hilton v. Guyot, 159 U. S. 113, 16 S. Ct. 139, 40 L. Ed. 95. The statutes relied on have no extraterritorial authority, and the purchaser at the judicial sale in Nassau was under no duty to comply with them.

[2-4] Of course, it may be inferred that the cargo of intoxicating liquor was intended for ultimate consumption in the United States but at the time and place of the seizure the vessel was not violating any law of the United States. Hennings v. United States (C. C. A.) 13 F.(2d) 74. It is immaterial that the Chiquita may have lost her British registry, and has not yet acquired permanent Honduran registry. The flag under which a merchant ship sails is prima facie proof of her nationality. If she is not properly registered, her nationality is still that of her owner. Moore, International Law, vol. 2, pp. 1002–1009.

[5-7] The frequent changes of name and ownership may give rise to the suspicion that the ship's true ownership was sought to be concealed, but property may not be declared forfeit on mere suspicion. It was incumbent on the government to show with reasonable certainty that the Chiquita was an American vessel when proceeded against. That burden has not been sustained.

The judgment is reversed, and the case remanded, with instructions to dismiss the libel and to restore the vessel and cargo to the claimant.